# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**DEBORAH THOMPSON,**

      **Plaintiff,**

                               **Case No. 2:12-cv-01054**

      **v.**                            **JUDGE GREGORY L. FROST**

                                        **Magistrate Judge Norah McCann King**

**CITY OF COLUMBUS,**

      **Defendant.**

## OPINION & ORDER

This matter is before the Court for consideration of Defendant City of Columbus' ("the City") motion for summary judgment (ECF No. 33), Plaintiff Deborah Thompson's response in opposition (ECF No. 42), and the City's reply (ECF No. 45).  For the reasons that follow, the Court **GRANTS** the motion.

## I.    BACKGROUND

This case involves allegations of discrimination by the City's Department of Development ("Department").  Plaintiff, a female who was fifty-nine years old at the time the alleged events took place, alleges that the Department failed to hire her for one of several job vacancies for which she was qualified.  The following facts are undisputed.

Plaintiff worked for the Department from approximately 1977 through 1987.  During that time, Plaintiff worked in the Department's Development Planning Division performing inspection and code enforcement work.  Plaintiff resigned from the Department in 1987.

After resigning, Plaintiff worked in a self-employed capacity.  Plaintiff's business, Highland Enterprises, owned rental properties.  Plaintiff would perform maintenance on those

1

properties, collect the rent, draft the leases, and otherwise manage the properties.

In 2010, job vacancies arose within the Department for the position of Development Rehabilitation Technician ("DRT").  That position is classified competitive, meaning that applicants must have taken a civil service examination and be on a valid certification list to be considered.  The civil service examination is administered by the City's Civil Service Commission ("Commission"), which prepares a certified list of eligible candidates who passed the civil service examination and meet the position's minimum qualifications.   The Commission then sends the certified list of individuals, without providing the individuals' ages or genders, to the appointing authority, which selects candidates from the list to interview.

Plaintiff passed the civil service examination in May 2010 and met the minimum qualifications for the DRT position.  After applying for the position, Plaintiff was included on the certified list of individuals qualified to fill the DRT vacancy.  Plaintiff was offered an interview; however, during that interview, Plaintiff initiated a discussion about a former city co-worker who recently was the subject of a negative newspaper article, which the interview panel found inappropriate.  Plaintiff also rummaged through her purse looking for a pen during the interview.  Ultimately, the interview panel concluded that Plaintiff was unprofessional during the interview and was not the best candidate for the job.  The Department hired two other qualified individuals, both of whom were listed on the same certification list as Plaintiff, to fill the vacancies.  The hired individuals were males aged forty-seven and fifty-six.

In 2011, several vacancies arose within the Department for the position of Property Maintenance Inspector Trainee ("PMIT"), for which Plaintiff applied.  A PMIT is responsible for, *inter alia*, inspecting property to ensure compliance with Columbus City Code.  (ECF No.

45-2, at 1.)  The required knowledge, skills, and abilities consist of:  the "[a]bility to read and interpret technical and legal language, ability to deal effectively with the public and associates; ability to write and speak effectively; ability to prepare reports and maintain accurate records; ability to use a computer, telephone, fax machine, copier."  (*Id*. at 2.)  Minimum qualifications include: "Completion of the twelfth school grade and two (2) years of experience in public contact, community relations, code or law enforcement, or planning or zoning related activities." (*Id*.)  College education could be used to substitute for the experience requirement.  (*Id*.)

The Department sought to fill seven vacancies for the PMIT position.  It obtained a certified list of qualified candidates, which included Plaintiff, from the Commission.  Plaintiff was interviewed along with twelve other individuals from the certification list.

The interview panel for the PMIT vacancies consisted of Human Resources Manager Drusilla Collins, a 41-year-old female, and Code Enforcement Division Administrator Dana Rose, a 61-year-old male.  Plaintiff knew and had worked with Dana Rose during her previous employment with the Department.

Here, the parties' recollections of the relevant facts diverge.  According to Plaintiff, she was upbeat in the interview, confident in her abilities, and sat at a normal posture.  According to the interview panel, Plaintiff slouched, twirled, played with a pair of eyeglasses, and "name-dropped" during the interview, which the panel considered unprofessional.  Indeed, Ms. Collins took notes from Plaintiff's interview and noted "? @tt !," which is shorthand for the observation that Plaintiff displayed a questionable attitude during the interview ("? @tt") that was sufficiently disturbing ("!") as to warrant discussion with the panel.  (ECF No. 33-1.)

Collins and Rose interviewed the remaining candidates, only one of whom was female.

All candidates were asked the same set of interview questions, with follow-up questions as appropriate.  Ultimately, the panel ranked the thirteen candidates based on their qualifications and interview performance.  Plaintiff was not one of the top eight candidates, and therefore was not offered a position.

The other female candidate who interviewed for the position (aged thirty-four) was offered one of the seven vacancies.  Two of the other vacancies were filled by males over fifty years of age.

Later in 2011, two additional vacancies for the PMIT position became available.  Because the interview panel had concluded it would not hire Plaintiff, however, she was not invited to re-interview.  The two additional PMIT vacancies were filled by a 31-year-old female and a 48-year-old male.

At some point after being informed she was not offered the DRT or PMIT positions, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC").  Plaintiff did not claim that the interview panels made any reference to her gender or age during the interviews, or that the Department made any reference to age or gender in communicating about the DRT or PMIT vacancies.  Instead, Plaintiff believed she possessed superior qualifications to the other candidates, and could not understand why they would receive job offers over her.  Plaintiff concluded that the only reason she was not hired was gender or age discrimination.

Plaintiff received a right-to-sue letter from the EEOC.  She then initiated this action, alleging that the Department violated several statutes when it failed to hire her for the DRT and/or PMIT positions.  Specifically, Plaintiff alleges that the Department violated Title VII (42

4

U.S.C. § 2000e-2), the Age Discrimination in Employment Act (29 U.S.C. § 623) ("ADEA") and Ohio's equal employment statute (Ohio Revised Code §§ 4112.02 and 4112.14) by discriminating against her on the basis of gender and on the basis of age with respect to both positions.

The Department filed a motion for summary judgment on all claims. In response, Plaintiff abandoned her claim that the Department discriminated against her with respect to the DRT position. Plaintiff also abandoned her independent claims that the Department discriminated against her with respect to the PMIT position on the basis of gender and on the basis of age. Now, Plaintiff asserts that her claim is a hybrid and that the Department discriminated against her with respect to the PMIT position on the combined bases of gender and age—i.e., based on her status as an older woman.

The Court now turns to the merits of the parties' arguments.

## II.    DISCUSSION

### A.    Standard of Review

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Muncie Power Prods., Inc. v. United Tech. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of the nonmoving party, which must set forth specific facts showing that there is a genuine issue of material fact for trial.  *Id.* (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)).  Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Hamad*, 328 F.3d at 234–35 (quoting *Anderson*, 477 U.S. at 251-52).

### B.     Analysis

Because Plaintiff does not oppose the Department's motion with respect to the DRT position, the Court deems those claims abandoned.  *See, e.g., Muncie Power Prods., Inc.*, 328 F.3d at 873; *Muir v. Chrysler LLC*, 563 F. Supp. 2d 783, 795 (N.D. Ohio 2008).  Accordingly, only the claims involving the PMIT position remain.  Plaintiff contends that "both [gender and age discrimination], in combination, led to Plaintiff not being hired by the City."  (ECF No. 42, at 3.)

Plaintiff's hybrid sex/age discrimination claim invokes both Title VII and the ADEA. Title VII prohibits an employer from failing or refusing to hire an individual because of that individual's sex, race, color, religion, or national origin.  42 U.S.C. § 2000e-2(a)(1).  The ADEA makes it unlawful for an employer to fail or refuse to hire an individual because of his or her age. 29 U.S.C. § 623(a)(1).

6

Although Title VII and the ADEA contain similar language, it is axiomatic that a plaintiff cannot, as Plaintiff attempts to do in this case, simply conflate two independent statutory schemes into a single claim for relief. The Court must therefore determine whether Plaintiff may bring her hybrid "sex-plus-age" claim under Title VII and/or her hybrid "age-plus-sex" claim under the ADEA. The Court will examine each statute separately.

*1. Title VII*

"Sex-plus" discrimination under Title VII, defined as discrimination based on sex plus some other characteristic, such as marriage or family status, is "widely recognized." *Derungs v. Wal-mart Stores, Inc.*, 141 F. Supp. 2d 884, 891 (S.D. Ohio 2000), *aff'd*, 374 F.3d 428 (6th Cir. 2004) (quoting *Martinez v. N.B.C., Inc.*, 49 F. Supp. 2d 305, 309 (S.D.N.Y. 1999)). *See also Phillips v. Martin Marietta Corp.*, 400 U.S. 542, 543 (1971) (recognizing a claim for discrimination against women with pre-school-age children); *Fox v. Brown Memorial Home, Inc.*, No. 2:09-cv-915, 2010 WL 3167849, at *2–3 (S.D. Ohio Aug. 10, 2010) (analyzing a "sex-plus" claim for discrimination against married females). *Accord Sprogis v. United Air Lines, Inc.*, 444 F.2d 1194, 1198 (7th Cir. 1971) (recognizing a Title VII claim on the basis of sex plus marital status); *Jefferies v. Harris Cty. Cmty. Action Ass'n*, 615 F.2d 1025, 1032–34 (5th Cir. 1980) (recognizing a Title VII claim on the basis of sex plus race). In recognizing these "sex-plus" theories of liability, one court noted that Title VII is aimed at combatting disparate treatment based on stereotypes of the protected classes, and "[t]he effect of the statute is not to be diluted because discrimination adversely affects only a portion of the protected class." *Sprogis*, 444 F.2d at 1198.

7

The question becomes whether sex plus age—i.e., discrimination based on an individual's status as an older woman—is a recognized subcategory under Title VII.  The Sixth Circuit has suggested it is not.  In two unpublished decisions that address this issue, both of which were decided after the Supreme Court recognized sex-plus-marriage discrimination in *Phillips*, the Sixth Circuit expressly pointed out that a sex-plus-age claim has not been recognized.  *See Schatzman v. Cty. of Clermont*, 234 F.3d 1269, *9 (6th Cir. 2000) (noting that "neither the Supreme Court, nor this Circuit, recognize such a [sex-plus-age] claim"); *Sherman v. Am. Cyanamid Co*., 188 F.3d 509, *1 (6th Cir. 1999) (declining the invitation to recognize a claim for sex-plus-age discrimination, in part because the plaintiff could not establish such a claim).[1]  Although those cases do not preclude Plaintiff's sex-plus-age claim, they show that additional analysis is warranted.

Plaintiff does not cite any authority in her brief to suggest that the Sixth Circuit would recognize a sex-plus-age claim under Title VII.  Courts in other jurisdictions, however, have recognized such a claim and analyzed it like any other sex-plus claim under Title VII.  *See, e.g., DeAngelo v. Dentalez, Inc*., 738 F. Supp. 2d 572, 584 (E.D. Pa. 2010); *Arnett v. Aspin*, 846 F .Supp. 1234, 1240–41 (E.D. Pa. 1994).  Because the Department does not raise this issue and/or challenge Plaintiff's right to pursue a sex-plus-age claim under Title VII, the Court will assume without deciding that such a claim exists for purposes of this Opinion & Order.

---

[1] The Department cites the district court's decision in *Sherman v. American Cyanamid Co*., 996 F. Supp. 719, 728 (N.D. Ohio 1998), in discussing the elements of a sex-plus-age discrimination claim.  (ECF No. 45, at 2.)  Because the Sixth Circuit affirmed this decision while expressly declining to recognize such a claim, however, the district court's decision is of little value in determining whether a sex-plus-age discrimination claim exists.

8

The question then becomes what standard applies to Plaintiff's claim.  Courts generally agree that "sex plus" discrimination is "ultimately premised on sex" and therefore should be analyzed like any sex discrimination claim under Title VII.  *Gee-Thomas v. Cingular Wireless*, 324 F. Supp. 2d 875, 882 (M.D. Tenn. 2004) (citing *Coleman v. B-G Maint. Mgmt. of Colorado, Inc.*, 108 F.3d 1199, 1203 (10th Cir. 1997)).  That is so because:

> when one proceeds to cancel out the common characteristics of the two classes being compared ([e.g.,] married men and married women), as one would do in solving an algebraic equation, the cancelled-out element proves to be that of married status, and *sex remains the only operative factor in the equation*.

*Coleman*, 108 F.3d at 1203 (quoting Lex K. Larson, *Employment Discrimination* § 40.04, at 40–12 (2d ed. 1996); *accord Fox*, 2010 WL 3167849, at *2 ("In a sex-plus or gender-plus case, a female plaintiff must prove that the subclass of women was unfavorably treated as compared to the corresponding subclass of men." (quoting *Derungs*, 374 F.3d at 432) (internal quotations omitted)); *see also DeAngelo*, 738 F. Supp. 2d at 584.

In a typical sex discrimination claim under Title VII, courts first ask whether the plaintiff is presenting direct evidence of discrimination or circumstantial evidence that would allow an inference of discriminatory treatment.  *Anthony v. BTR Auto. Sealing Sys., Inc.*, 339 F.3d 506, 514 (6th Cir. 2003) (citing *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003)).  Where, as here, a plaintiff relies on circumstantial evidence, courts utilize the burden-shifting approach set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), as refined in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981).  *Anthony*, 339 F.3d at 514.

Plaintiff contends, and the Department does not dispute, that the *McDonnell Douglas-*

9

*Burdine* burden-shifting framework applies to her claim.  *See* ECF No. 42, at 4 (citing *Anthony*).[2]
The Court will proceed to apply the *McDonnell Douglas-Burdine* framework to the facts of case.

        a.  <u>*McDonnell Douglas-Burdine* framework</u>

     Under *McDonnell Douglas-Burdine*, the plaintiff faces the initial burden of presenting a
prima facie case of discrimination.  *Anthony*, 339 F.3d at 515.  Plaintiff therefore must prove
that: (1) she is a member of a protected class; (2) she applied for, and did not receive, a job; (3)
she was qualified for the job; and (4) a similarly-situated person who was not in her protected
class received the job.  *See id.* (citing *Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1166
(6th Cir. 1996)).

     Assuming Plaintiff can make her prima facie case, the burden of production then shifts to
the Department, which must articulate some legitimate and nondiscriminatory reason for taking
the challenged action.  *See id.*  The burden then shifts back to Plaintiff to prove that the
Department's proffered reasons are not the true reason, but are instead a pretext for
discrimination.  *See id.*

     Several factors are relevant to a plaintiff's showing of pretext.  First, a plaintiff "will
usually demonstrate pretext by showing that the employer's stated reason for the adverse
employment action either (1) has no basis in fact, (2) was not the actual reason, or (3) is
insufficient to explain the employer's action."  *White*, 533 F.3d at 392–93.  Plaintiffs may,

---

[2] Plaintiff does not argue that she is pursuing a "mixed-motives" claim under Title VII,
which would not be subject to *McDonnell Douglas.  See White v. Baxter Healthcare Corp.*, 533
F.3d 381, 396–402 (6th Cir. 2008).  As such, the Court will not conduct a mixed-motives
analysis and will instead focus on whether Plaintiff presented evidence in support of her claim
that she was treated unfavorably as compared to a subclass of older men.  To the extent
Plaintiff's Complaint can be construed as asserting a mixed-motives claim, the Court deems any
such claim abandoned.

however, choose to demonstrate pretext "by offering evidence which challenges the reasonableness of the employer's decision 'to the extent that such an inquiry sheds light on whether the employer's proffered reason for the employment action was its actual motivation.' " *Id*. (citing *Wexler*, 317 F.3d at 578); *see also Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 626–27 (6th Cir. 2006) ("[A plaintiff] must show, in essence, that [the defendant's] 'business decision was so lacking in merit as to call into question its genuineness.' " (citing *Hartsel v. Keys*, 87 F.3d 795, 800 (6th Cir. 1996))).

The issue of whether the employer's decision relies on subjective factors, although not evidence of pretext, could be relevant to a finding of pretext. *Benjamin v. Brachman*, 246 F. App'x 905, 922 (6th Cir. 2007) (citing *Aka v. Washington Hosp. Ctr*., 156 F.3d 1284, 1298 (D.C. Cir. 1998)). As with other factors, "the use of subjective criteria must be considered in conjunction with . . . other evidence of pretext." *Chattams v. Donahoe*, No. 3:09-cv-187, 2011 WL 5167165, at *8–9 (S.D. Ohio Oct. 31, 2011) (citing *Cottom v. City of Franklin*, No. 3:09-cv-215, 2010 WL 3521751, at *11 (W.D. Tenn Sept. 7, 2010)).

Evidence that a plaintiff has superior qualifications to the chosen applicant(s) also may be relevant to the question of pretext. *Bender*, 455 F.3d at 626–27. A court must, however, consider that qualifications evidence in light of the strength of the plaintiff's case. *Id*. When there is little to no other probative evidence of discrimination, "to survive summary judgment the rejected applicant's qualifications must be so significantly better than the successful applicant's qualifications that no reasonable employer would have chosen the latter applicant over the former." *Id*. Absent evidence that one employee is "plainly superior" to the other, the fact that the plaintiff was as qualified if not better qualified than the successful applicant only establishes

11

pretext "if the record contains other probative evidence of discrimination." *Perryman v. Postmaster Gen.*, 475 F. App'x 585, 590 (6th Cir. 2012).

The employer's history with and actions taken towards members of the protected class also are relevant to the pretext issue. *See McDonnel Douglas*, 411 U.S. at 804–805 (explaining that statistics may be helpful in determining whether the employer's refusal to hire the plaintiff conformed to a general pattern of discrimination against the protected class); *Lefevers v. GAF Fiberglass Corp.*, 667 F.3d 721, 726 (6th Cir. 2012) (finding no inference of discrimination in a reduction in force case when many of the retained employees were in the plaintiff's protected class). In *Downs v. Shinseki*, for example, the district court stated: "evidence that the Defendant hired numerous individuals who were themselves in the protected class, especially in the absence of persuasive evidence tending to show pretext, weighs heavily against a finding that the plaintiff was the victim of intentional age discrimination." No. 3:10-0661, 2013 WL 4401836, at *9 (M.D. Tenn. Aug. 14, 2013) (citing *Lefevers*).

The above-cited factors must all be viewed in context with the Sixth Circuit's cautionary statements that employers generally are free to choose among qualified candidates, and that the role of courts is to prevent unlawful employment practices, not to act as a "super personnel department, overseeing and second guessing employers' business decisions." *Bender*, 455 F.3d at 626–27. As such, courts must keep in mind that a plaintiff's subjective belief that he or she was more qualified than other applicants is insufficient to create a question of fact and defeat a summary judgment motion. *See Browning v. Dep't of the Army*, 436 F.3d 692, 698 (6th Cir. 2006).

12

      b.  <u>Application to this case</u>

Pursuant to the burden-shifting framework set forth above, the Court first examines whether Plaintiff set forth a prima facie case of discrimination.  Because Plaintiff is a member of a protected class under Title VII (female), was qualified for the PMIT position, and applied for but did not receive the PMIT position, the first three elements of Plaintiff's prima facie case are undisputed.  Regarding the fourth element, the Department does not dispute that similarly-situated persons not in her protected class (men) were hired for the job.  Because Plaintiff is pursuing a sex-plus-age claim, however, the relevant comparators are limited to the subclass of older men.  *See Fox*, 2010 WL 3167849, at *2.  It is undisputed that four of the men selected for the PMIT position (Randy Hipsher, Paul Kidwell, Daniel McCann, and James Mercer) (collectively, the "Comparators") were forty years old or older at the time they were selected.  As such, the ultimate issue for the Court is whether Plaintiff can prove she was treated unfavorably as compared to those four men.

Because Plaintiff met her burden in establishing a prima facie case, the burden then shifts to the Department to articulate a reason for its decision not to hire Plaintiff.  The Department provided affidavits from Drusilla Collins and Dana Rose stating, *inter alia*, that they did not believe Plaintiff was one of the most qualified candidates for the PMIT position based on how she conducted herself during the interview.  (ECF Nos. 33-1 & 33-5.)  Ms. Collins noted that she was dismayed by Plaintiff's attitude during the interview, which she (Ms. Collins) considered "extremely lackadaisical . . . unprofessional and distasteful."  (ECF No. 33-1 ¶ 9.)  Similarly, Mr. Rose was not impressed with Plaintiff's conduct during the interview, finding her "difficult and demanding" and believing "she would rub people the wrong way."  (ECF No. 33-5 ¶ 6.)  Both

13

Ms. Collins and Mr. Rose considered attitude to be an important factor in making hiring decisions because interacting with the public is a large part of a PMIT's job responsibilities. *See* ECF No. 45-2 (listing "ability to deal effectively with the public and associates" as a required skill for the position). Accordingly, after discussing and ranking the applicants in preferential order, Plaintiff was not offered a position.

The Department's explanation for its decision is sufficient to shift the burden back to Plaintiff. The issue now becomes whether Plaintiff can demonstrate that the reasoning offered by Ms. Collins and Mr. Rose was a pretext for discrimination.

Plaintiff's first argument in support of her pretext argument is that her qualifications made her "plainly superior" to the other PMIT candidates such that no reasonable employer would have hired the Comparators over her, thereby making it more likely than not that the Department's decision was based on discrimination. Several points are relevant to this analysis. First, it is undisputed that the Comparators were included on the Commission's certification list and therefore met the minimum qualifications for the position. Second, the Court is mindful that different qualifications do not necessarily render one candidate more qualified than another. The question is not, as Plaintiff seems to assume, limited to which candidate has the most education or years of experience. *See, e.g., Bartlett v. Gates*, 421 F. App'x 485, 491 (6th Cir. 2010) (finding that a plaintiff with twenty-four years of relevant work experience was not plainly superior to a candidate with lesser education and eight years of relevant work experience). Third, whether one candidate's skills and experience are superior to another's must be viewed in light of the position's needs; one candidate's "superior skills" do not make him or her more qualified than another applicant if those skills are not needed for the position at issue. *Viergutz*

14

*v. Lucent Techs., Inc.*, 375 F. App'x 482, 484 (6th Cir. 2010).

Here, Plaintiff cannot prove that her qualifications rendered her plainly superior to the Comparators. The fact that Plaintiff holds a college degree in Philosophy (plus extra college coursework and a membership in a national honor society) is not directly relevant to the PMIT position, which did not require a college degree. Of the Comparators, one did not have a college degree but had completed college coursework in electronic engineering and was in the process of obtaining an accredited "Home Inspector Career" certification, one held an Associate's degree plus other certifications (including specific "Property Maintenance and Housing Inspector" training), one did not have a college degree but held a certification in real estate sales, and one had some college coursework (in electronics and computer technology) but no degree. (ECF Nos. 42-6, 42-7, 42-8, 42-9.) Given the needs of the position, the Court cannot conclude that Plaintiff's degree rendered her plainly superior to the Comparators.

Plaintiff's eight-plus years of experience doing inspection/code work for the City, although directly relevant to the position, also do not make her plainly superior to the Comparators. The Court acknowledges that Dana Rose mentioned during the interview that the Department needed a PMIT who could jump in right away to help with work overflow, and that Plaintiff's experience made her an attractive candidate in that respect. As the Department notes, however, the PMIT position is a trainee-level classification that did not require inspection or code experience. *See* ECF No. 45-2 (stating that the position required "two (2) years of experience in public contact, community relations, code or law enforcement, or planning or zoning related activities"). It would not be unreasonable for the Department to hire candidates with a wealth of different experience that would inform the manner in which they learned to

15

perform the PMIT position.  One of the Comparators, for example, had experience handling

technical issues and escalated customer issues from other associates, which is relevant to a

PMIT's job duties (which include operating equipment and participating in computer/software

user training) and required skills/abilities (which include the ability to deal effectively with the

public and associates).  *See* ECF No. 42-9.  Another had seven years of experience doing

building maintenance for the Columbus Metropolitan Housing Authority.  *See* ECF No. 42-8.

The third Comparator had ten years of experience operating his own business in the construction

field, which is relevant to several of a PMIT's job duties.  *Compare* ECF No. 42-6 (stating that

the candidate had experience installing, upgrading, and maintaining certain devices on

commercial property, installing devices for the City, conducting property surveys, and

performing electronic invoicing and record keeping, among other things) *with* ECF No. 45-2

(listing examples of a PMIT's duties as, *inter alia*, learning to perform property inspections, and

maintaining appropriate records and files).  The fourth Comparator had several years of recent

inspection and home improvement experience, which unquestionably is relevant to the PMIT

position.  *See* ECF No. 42-7.

On the other hand, Plaintiff had experience doing code/inspection work for the City

between 1977 and 1987, at which time she resigned her employment.  She then worked in a self-

employed capacity for twenty years.  The Court cannot conclude that this experience, viewed in

light of the needs of the PMIT position, made Plaintiff plainly superior to the Comparators such

that no reasonable employer would have selected the Comparators over her.  Plaintiff therefore

cannot defeat a summary judgment motion on qualifications evidence alone.  *See Bender*, 455

F.3d at 626–27.  At most, this evidence establishes that Plaintiff was as qualified if not better

qualified than the comparators, which can only establish pretext "if the record contains other probative evidence of discrimination." *Perryman*, 475 F. App'x at 590.

Plaintiff's only other argument in support of her position is that the Department's reason for not hiring her is subjective. Plaintiff adds that the interviewers did not specifically note in their interview notes that Plaintiff slouched, name-dropped, or played with a pair of eyeglasses, such that their proffered reason for not hiring her contains "indicia of untrustworthiness." (ECF No. 42, at 11 (citing *Aka*, 156 F.3d at 1295, 1298). Plaintiff also adds that the male interviewer's (Mr. Rose) notes diverged from the female interviewer's (Ms. Collins) notes, and that Mr. Rose reviewed Plaintiff less favorably than did Ms. Collins due to a perceived "gender gap being at play." (*Id*. at 13.)

These arguments are not persuasive, for several reasons. The fact that an employer's decision is based on subjective criteria is not itself "evidence" of pretext. *Chattams*, 2011 WL 5167165, at *8–9. It simply is a factor to be considered in conjunction with other evidence of pretext, of which there is none in this case. Moreover, although the interviewers did not mention specific behaviors in their notes, Ms. Collins did note that she was dismayed by Plaintiff's attitude during the interview and that she intended to discuss that observation with the panel. (ECF No. 33-1 ¶ 10.) In contrast, Ms. Collins' notes from the Comparators' interviews reflect her belief that three of the four Comparators displayed good or great attitudes during their interviews. (ECF No. 45-1 ¶ 4.) Those notes also poke a hole in Plaintiff's theory that she was not hired due to a perceived "gender gap" between her and Ms. Collins, on one side, and Mr. Rose, on the other. In short, although the subjective nature of the Department's decision might be probative of pretext in some contexts, it does not create a question of fact in this case.

17

As a final note, the Court acknowledges that the Department's employment statistics cut even further against Plaintiff's pretext argument in this case.  The Department provided evidence that, of the Department's 167 employees, 54 are females at least forty years of age, and 54 are males at least forty years of age.  (ECF No. 45-1 ¶ 2.)  Of the 54 females, 32 are at least fifty years old.  (*Id.*)  Identically, 32 of the male employees are at least fifty years old.  (*Id.*)  That evidence suggests that the decision not to hire Plaintiff was not part of a larger plan to exclude older females from employment with the Department.  That evidence also suggests that, in general, the Department did not treat older females less favorably than older men.

In the end, Plaintiff is left with her own belief that she performed well during her interview and should have been hired.  That evidence is insufficient to create a question of fact as to whether the Department discriminated against her on the basis of her status as an older woman.  The Court therefore **GRANTS** the Department's motion with respect to Plaintiff's sex-plus-age claim under Title VII.

To the extent Plaintiff intended to pursue a sex discrimination claim in addition to her sex-plus-age claim, that claim also fails.  Plaintiff's evidence of pretext would be even less compelling in a standard sex discrimination lawsuit because all female applicants for the PMIT position would be part of the protected class.  As such, the fact that the two other females who interviewed for the PMIT position received offers of employment weighs heavily against a finding that Plaintiff was the victim of intentional gender discrimination.  *Cf. Downs*, 2013 WL 4401836, at *9; *see also Lefevers*, 667 F.3d at 726.  Given that fact, and the lack of any probative evidence of pretext, Plaintiff cannot meet her burden on a Title VII claim.  The Court therefore **GRANTS** the Department's motion with respect to any claim being asserted under Title VII.

18

    *2.  ADEA*

    Having found that Plaintiff's Title VII claim fails, the next question for the Court is whether Plaintiff can bring her age-plus-sex discrimination claim under the ADEA.  It is unclear from her brief whether Plaintiff is pursuing such a claim, as she focuses exclusively on the sex-plus line of cases discussed above and does not provide any authority in which a court recognized an "age-plus" claim under the ADEA.

    In fact, courts have almost unanimously concluded that age-plus claims under the ADEA do not exist.  *See, e.g., Johnson v. Napolitano*, No. 10 CIV 8545, 2013 WL 1285164, at *8–9 (S.D.N.Y. Mar. 28, 2013); *Cartee v. Wilbur Smith Assocs., Inc.,* No. 3:08-4132, 2010 WL 1052082, at *4 (D.S.C. Mar. 22, 2010); *Block-Victor v. CITG Promotions, L.L.C. d/b/a Evigna*, 665 F. Supp. 2d 797, 808 n.2 (E.D. Mich. 2009); *Luce v. Dalton*, 166 F.R.D. 457, 460–61 (S.D. Cal. 1996); *Kelly v. Drexel Univ.*, 907 F. Supp. 864, 875 n.8 (E.D. Pa. 1995).[3]  Those courts have distinguished the ADEA from Title VII, reasoning that sex-plus theories of discrimination are based, at least in part, upon a recognition of unique discriminatory biases against certain subclasses of individuals under Title VII (such as Asian women, for example) that do not exist in the age discrimination context.  *Luce*, 166 F.R.D. at 461.  In light of this authority, and absent any authority suggesting that the Sixth Circuit would recognize an age-plus claim under the ADEA, the Court concludes that age-plus-sex claims under the ADEA do not exist.  To the extent Plaintiff was attempting to pursue such a claim, summary judgment is proper.

    Because Plaintiff only provided evidence in support of a combined age/sex claim for

---

    [3] *But see Seigel v. Iverness Med. Innovations, Inc.*, No. 1:09-CV-1791, 2009 WL 3756709, at *2 (N.D. Ohio Nov. 6, 2009) (purporting to recognize, with no apparent analysis, an age-plus-sex claim under the ADEA).

discrimination, the Court considers Plaintiff's age discrimination claim (independent of her sex discrimination allegations) abandoned.  Even if the Court were to consider that claim, however, it would be subject to the same analysis—and fail for the same reasons—as that set forth above. And, similar to the sex discrimination claim, the fact that the Department filled four of the eight PMIT vacancies with individuals over age forty weighs heavily against a finding of age discrimination.  *See Downs*, 2013 WL 4401836, at \*9.  The Court therefore **GRANTS** the Department's motion for summary judgment with respect to the ADEA claim.

      *3.  State-Law Claims*

The Department moved for summary judgment on Plaintiff's state law claims; however, Plaintiff did not respond to those arguments.  It is unclear whether Plaintiff intended to pursue her state-law claims or if she abandoned those claims as well.

Even if the Court were to consider Plaintiff's state-law claims, summary judgment on those claims is proper for the same reasons as those set forth above.  *See Fiedderman v. Daiichi Sankyo*, 930 F. Supp. 2d 899, 908 (S.D. Ohio 2013) ("Claims brought under Title VII and Chapter 4112 are evaluated under the same standard." (citing *Thompson v. UHHS Richmond Heights Hosp., Inc.*, 372 F. App'x 620, 623 (6th Cir. 2010))).  Furthermore, Plaintiff's charge filed with the EEOC precludes her state law age discrimination claims under Ohio Revised Code §§ 4112.14 and 4112.99.  *See Gray v. Allstate Ins. Co.*, No. 1:03-CV-910, 2005 WL 2372845, at \*5–7 (S.D. Ohio Sept. 26, 2005).  The Court therefore **GRANTS** the Department's motion for summary judgment on Plaintiff's state law claims.

## III.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Department's motion for summary

20

judgment on all claims.  (ECF No. 33.)  The Clerk is **DIRECTED** to enter judgment accordingly and terminate this case from the docket records of the United States District Court for the Southern District of Ohio, Eastern Division.

       **IT IS SO ORDERED**.

                                    **/s/ Gregory L. Frost**
                                    **GREGORY L. FROST**
                                    **UNITED STATES DISTRICT JUDGE**